UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL THOMAS CASILLAS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　Defendant. | No.  2:21-cv-1247-KJN<br><br>ORDER<br><br>(ECF Nos. 14, 19.) |

　　　　Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security denying his application for Disability Insurance Benefits and Supplemental Security Income.[1]  In his summary judgment motion, plaintiff contends the Administrative Law Judge erred in failing to adequately assess the opinions of two treating physicians.  Plaintiff seeks a remand for further proceedings.  The Commissioner opposed, and filed a cross-motion for summary judgment, and seeks affirmance.

　　　　For the reasons that follow, the court DENIES plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion, and AFFIRMS the final decision of the Commissioner.

///

---

[1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15), and both parties consented to proceed before a Magistrate Judge for all purposes.  (ECF Nos. 7, 8, 12.)

1

I. **RELEVANT LAW**

The Social Security Act provides for benefits for qualifying individuals unable to "engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a); 1382c(a)(3). An Administrative Law Judge ("ALJ") is to follow a five-step sequence when evaluating an applicant's eligibility, summarized as follows:

> **Step one**: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> **Step two**: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> **Step three**: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> **Step four**: Is the claimant capable of performing past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
> **Step five**: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995); see also 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). The burden of proof rests with the claimant through step four, and with the Commissioner at step five. Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020).

A district court may reverse the agency's decision only if the ALJ's decision "contains legal error or is not supported by substantial evidence." Id. at 1154. Substantial evidence is more than a mere scintilla, but less than a preponderance, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The court reviews the record as a whole, including evidence that both supports and detracts from the ALJ's conclusion. Luther v. Berryhill, 891 F.3d 872, 875 (9th Cir. 2018). However, the court may review only the reasons provided by the ALJ in the decision and may not affirm on a ground upon which the ALJ did not rely. Id. "[T]he ALJ must provide sufficient reasoning that allows [the court] to perform [a] review." Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020).

The ALJ "is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Ford, 950 F.3d at 1149. Where evidence is susceptible to more than one rational interpretation, the ALJ's conclusion "must be upheld." Id. at 1154. Further, the court may not reverse the ALJ's decision on account of harmless error. Id.

## II. BACKGROUND AND ALJ'S FIVE–STEP ANALYSIS

On March 21, 2019, plaintiff applied for Disability Insurance Benefits and Supplemental Security Income, alleging an onset date of April 2, 2017. (Administrative Transcript ("AT") 230.) Plaintiff claimed disability due to HIV/AIDS, vision conditions, PTSD, ADHD, depression, anxiety disorder, blood clots, and anal dysplasia. (AT 271.) Plaintiff's applications were denied initially and after reconsideration, and plaintiff sought a hearing before the ALJ. (AT 74-151; 169.) At a November 2020 hearing, plaintiff testified about his symptoms, and a vocational expert testified about the availability of jobs for hypothetical persons with similar limitations. (Id.)

On December 21, 2020, the ALJ issued a decision determining plaintiff was not disabled. (AT 17-29.) As an initial matter, the ALJ determined plaintiff met insured status through December 31, 2022. (AT 19.) At step one, the ALJ determined plaintiff had not engaged in substantial gainful activity since April 2, 2017. Id. At step two, the ALJ determined plaintiff had the following severe impairments: "Human immunodeficiency virus[], inguinal hernia status-post repair, obesity, anal dysplasia, immune reconstitution inflammatory syndrome[], disseminated bacteriosis, right DeQuervain's syndrome, left lower extremity DVT, major depressive disorder, generalized anxiety disorder, and posttraumatic stress disorder." (Id.)

At step three, the ALJ determined plaintiff's impairments did not meet or medically equal the severity of one of the listed impairments in Appendix 1. (Id.) Relevant here, regarding plaintiff's mental limitations, the ALJ found they did not satisfy the listings of 12.04 (depression), 12.06 (anxiety), 12.11 (neurodevelopment disorders), and 12.15 (trauma and stress). In making this determination, the ALJ considered both the paragraph B and C criteria. (AT 20-21.) Under paragraph B, the ALJ found mild limitation in understanding, remembering, or applying information; moderate limitation in interacting with others; moderate limitation in concentrating, persisting, or maintaining pace; and moderate limitation in adapting or managing oneself. (AT 21-22.) In making these findings, the ALJ cited to plaintiff's normal perception, cognition, and insight; above average intelligence; logical thought process; ability to drive, go out alone, go on vacation, and care for an elderly neighbor. (Id., citing Exhibits 4E, 6F, 15F/6, and 17F.)

The ALJ then found plaintiff had the residual functional capacity ("RFC") to perform light work with multiple additional postural limitations. (AT 22.) Relevant here regarding plaintiff's mental impairments, the RFC found plaintiff:

> is limited to isolated work, which involves no public contact and occasional direct coworker and supervisor interaction and no group tasks [with] no limit on incidental coworker and supervisor contact[;] should perform only low stress work, which is defined as requiring only occasional changes in work setting, occasional changes in work duties and no work on a moving conveyor belt[;] [and] can understand, remember and carry out simple and routine instructions and tasks[.]

(AT 22.) In crafting this RFC, the ALJ stated she considered the extent to which plaintiff's symptoms could be reasonably accepted as consistent with objective medical evidence and other evidence, the medical opinions, and the prior administrative medical findings. (AT 22-23.)

Regarding the evidence, the ALJ noted that plaintiff reported in April 2017 that he "endorsed fatigue, lethargy, difficulty concentrating, stress, disturbing thoughts, and nightmares." (AT 24.) Further, plaintiff had an "anxious mood and rapid/pressured speech, but appropriate appearance, adequate grooming and hygiene, intact orientation, and excellent fund of knowledge." (Id.) The ALJ noted plaintiff was mildly distracted for five months in 2017, but in March 2018 he had "appropriate appearance, adequate grooming and hygiene, intact orientation, average fund of knowledge, and intact insight/judgment". (Id.)

Regarding the medical opinions, the ALJ considered the opinions of eight doctors; relevant here are the opinions of Drs. Martin, Zukowsky, Kashersky, and Rosi. The ALJ found the opinion of Dr. Martin persuasive because she supported her opinion with mental status examinations, and because it was consistent with plaintiff's occasionally noted distractibility, anger, and uncooperativeness. (AT 25-26.) Dr. Zukowsky's opinion was also found persuasive because it was supported by explanations and references to plaintiff's mental health records, and because it was consistent with plaintiff's normal mental status exams and self-reported activities. (AT 26.) Conversely, the more-limiting opinions of Drs. Kashersky and Dr. Rosi were found unpersuasive because they were check-box forms without explanations, and because they were inconsistent with plaintiff's normal cognitive processes and daily activities. (AT 26-27.)

The ALJ found plaintiff was incapable of performing past relevant work, but found at step five that plaintiff could perform other work existing in significant numbers in the national economy, such as a marker, photocopy machine operator, and housekeeping cleaner. (AT 27-29.) Thus, the ALJ determined plaintiff was not disabled for the relevant period. (Id.)

Plaintiff then filed this action requesting judicial review of the Commissioner's final decision; the parties filed cross-motions for summary judgment. (ECF Nos. 1, 14, 19.)

### III.     ISSUE PRESENTED

Plaintiff contends the ALJ erred by failing to adequately assess the opinions of treating doctors Kevin Rosi, M.D., and Leona Kashersky, Psy. D., rendering the decision unsupported by substantial evidence. Specifically, plaintiff argues the ALJ was incorrect in faulting doctors Rosi and Kashersky for failing to support their opinions by only using check box forms, as those forms do in-fact include explanations. Plaintiff also argues the ALJ's inconsistency analysis is deficient, asserting the decision inappropriately focuses on plaintiff's more benign showings without considering other aspects of the record. Thus, plaintiff argues the ALJ cherry-picked around the record to craft a result.[2] Plaintiff argues the Commissioner's decision should be vacated and the case should be remanded for further administrative proceedings. (ECF No. 14, 20.)

The Commissioner disagrees, arguing the ALJ properly evaluated medical opinion evidence of Doctors Rosi and Kashersky because the ALJ properly determined that the actual level of limitation opined by each doctor lacked adequate support and was inconsistent with the record (including the medical evidence, opinions of the other doctors, and plaintiff's testimony). Thus, the Commissioner contends the decision is supported by substantial evidence, is in accordance with the law, and should be affirmed. (ECF No. 19.)

///

---

[2] Plaintiff also argues that his treating physicians should be given more weight than the non-examining physicians. (ECF No. 14.) However, ALJs are no longer required to articulate findings on the effect of a doctor's relationship unless the ALJ finds two or more opinions equally persuasive. See Woods, 32 F.4th at 789-92 ("Now, an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence.")

## IV.     DISCUSSION

**Legal Standards – Medical Opinions and Persuasiveness**

For applications filed on or after March 27, 2017, an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) ("PAMF") [i.e., state-agency medical consultants], including those from [plaintiff's] medical sources." See 20 C.F.R. §§ 404.1520c(a) and 416.920c(a). Instead, an ALJ is to evaluate medical opinions and PAMFs by considering their "persuasiveness." Id. In determining how "persuasive" the opinions of a medical source or PAMF [are], an ALJ must consider the following factors: supportability, consistency, treatment relationship, specialization, and "other factors." Id. at sub. (b)-(c)(1)-(5).

Despite a requirement to "consider" all factors, the ALJ's duty to articulate a rationale for each factor varies. Id. at sub. (a)-(b). In all cases, the ALJ must at least explain how the supportability and consistency factors were considered, as they are "the most important factors." Id. at sub. (b)(2). Supportability is "the extent to which a medical source supports the medical opinion by explaining relevant objective medical evidence." Woods v. Kijakazi, 32 F.4th 785, 791-92 (9th Cir. 2022). Consistency is "the extent to which a medical opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." Id. at 792. The regulations grant the ALJ flexibility to weigh the supportability and consistency factors based on all evidence in the record. 20 C.F.R. §§ 404.1520c(c)(1)-(2) and 416.920c(c)(1)-(2). The ALJ is required to articulate findings on the remaining factors (relationship with plaintiff, specialization, and "other") only where "two or more medical opinions or prior administrative medical findings about the same issue" are "not exactly the same," and both are "equally well-supported [and] consistent with the record." Id. at sub. (b)(2)-(3).

An ALJ may address multiple opinions from a single medical source in one analysis. § 404.920c(b)(1) ("source-level articulation"). "[I]n interpreting the evidence and developing the record, the ALJ does not need to discuss every piece of evidence." Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003)).

///

**Analysis**

**A. The ALJ erred in stating the opinions of Drs. Rosi and Kashersky had no support because they were expressed in check-box forms, as explanations were provided.**

"[A]n ALJ is not required to take medical opinions at face value." Ford, 950 F.3d at 1155. Rather, an ALJ can consider the quality of a doctor's explanation when determining the amount of weight to give a medical opinion. Id. Regarding check-box forms, an ALJ cannot completely dismiss a doctor's opinion on account of it being expressed in a check-box form, but may disregard the opinion if there is no explanation for the basis of the doctor's conclusions. Ford, 950 F.3d at 1155 (9th Cir. 2020) (citing Popa v. Berryhill, 872 F.3d 901, 907 (9th Cir. 2017) (finding error where an ALJ rejected a medical opinion simply because it was expressed in check-box form); Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (finding it permissible for an ALJ to reject a check-box opinion because it "did not contain any explanation of the bases [of a doctor's] conclusions")).

Here, Drs. Rosi and Kashersky each utilized a check-box form to state their opinions regarding plaintiff's mental limitations. Dr. Rosi checked off that plaintiff had mild limitations in his ability to follow one or two step oral instructions; sequence multi-step activities; and understand and respond to social cues; moderate limitations cooperating with others or asking for help when needed; moderate to marked limitations in areas of concentration, persistence, maintaining pace, and adapting or managing oneself; and marked limitations in his ability to use reason and judgment to make work-related decisions as well as in "all other areas of social functioning." (AT 1392-94.)  Dr. Kashersky checked off that plaintiff had  moderate limitations maintaining personal hygiene and appropriate work-setting attire; marked limitations in all other areas of adapting or managing oneself, in understanding, remembering, or applying information, in concentrating, persisting and maintaining pace and in understanding and responding to social cues; and extreme limitations in all other areas of interacting with others. (AT 1397-99.) The ALJ found both Dr. Rosi's and Dr. Kashersky's opinions unpersuasive in part due to "simply check[ing] boxes without providing explanations to support [their] opinion." (AT 26-27).

///

However, in addition to checking those boxes, both doctors did provide narratives—briefly—to support their opinions. (See AT 1392-94 (Dr. Rosi's form, which contained further written elaboration about plaintiff's symptoms and limitations); AT 1397-98 (Dr. Kashersky, same).) Thus, the ALJ's statements that these doctors "checked boxes without providing explanations" (AT 26-27) does not completely align with the record. Given that it is the ALJ's responsibility to properly weigh the support each doctor had for their opinions, the normal remedy would be to remand for further proceedings. Ford, 950 F.3d at 1149 (reminding that it is for the ALJ to resolve conflicts and ambiguities in the record). Despite this error, the ALJ articulated other valid reasons to find these doctors' opinions unpersuasive, given the noted inconsistencies between these opinions and the remainder of the evidence. Thus, the error is harmless. Id. at 1154 (noting the court may not reverse on account of harmless error); see also, e.g., Kendalee L. R. v. Kijakazi, 2022 WL 4599184 (D. Idaho 2022) (finding harmless error where an ALJ improperly discounted a check-box opinion but where other valid reasons for discrediting it were articulated, including inconsistencies with other evidence in the record).

### B. The ALJ properly articulated the inconsistencies between the opinions of Drs. Rosi and Kashersky and other evidence in the record.

The ALJ considered several pieces of evidence in reaching the conclusion that plaintiff does not have the extreme mental limitations as opined by Drs. Rosi and Kashersky. The ALJ explicitly determined the opinions were inconsistent with plaintiff's ability to go out alone, drive, or attend school in person and online, as well as his clear speech, logical thought process, normal perception, normal cognition, normal insight, normal judgment, and above average intelligence. (AT 26-27; see also AT 21-22, citing Exhibits 4E, 6F, 15F/6, and 17F.) The ALJ noted plaintiff's testimony that he had "out of control" mental symptoms, but the ALJ found the testimony contradicted by others of plaintiff's self-reports and the medical record as a whole. (AT 25, citing various exhibits.) Also implicit in the decision is inconsistency between these opinions and those of Drs. Martin and Zukowsky—each of whom found plaintiff less-severely limited (opinions deemed persuasive by the ALJ). (AT 25-26.) These are valid reasons for an ALJ to deem an opinion less persuasive. Ford, 950 F.3d at 1156; see also, e.g., Kendalee, 2022 WL 4599184.

8

Plaintiff contends the decision mischaracterized evidence of his lifestyle (such as going out alone and driving to school) because the ALJ did not provide the testimony proper context and cherry-picked around other evidence. However, plaintiff only points to a sliver of evidence, his testimony that he was assisted with some of his school work and was sometimes accompanied to appointments, as opposed to numerous pieces of evidence cited above. Cf. Holohan v. Massanari, 246 F.3d 1195, 1207 (9th Cir. 2001) (finding reversible cherry-picking due to reliance on some entries and ignoring *many* others that supported the alternative) (emphasis added). Ultimately, the ALJ concluded the record indicated plaintiff's testimony was generally in line with his symptoms but were not as extreme as alleged—a finding plaintiff does not challenge here. Ford, 950 F.3d at 1149 (reminding that the ALJ "is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities").

For these reasons, the court finds the ALJ's determination (that the opinions of Drs. Rosi and Kashersky were inconsistent with other evidence in the record) to be supported by substantial evidence and free from legal error. Ford, 950 F.3d at 1154 (noting that substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion").

### V.  CONCLUSION

Beyond plaintiff's challenges, the court finds the ALJ's decision otherwise supported by substantial evidence in the record and free from legal error. Ford, 950 F.3d at 1148 (noting that a district court may reverse only if the ALJ's decision "contains legal error or is not supported by substantial evidence"). Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 14) is DENIED;
2. The Commissioner's cross-motion (ECF No. 19) is GRANTED;
3. The final decision of the Commissioner is AFFIRMED; and
4. The Clerk of Court is directed to CLOSE this case.

Dated: February 8, 2023

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

"AM"/SD,casi.1247